and on behalf of Mr. Stewart, please step forward and identify yourself. Good morning, my name is Sarah Curry and I represent Frederick Stewart. Just to give you a little road map of what I intend to argue, I'm going to start with the issues and arguments 2 and 3 and move on to the first part of argument 1 and argument 5. All right, 15 minutes and you want to reserve a little bit. I'm going to move as quickly as I can. And we're not going to discuss the zero. It was not my intention unless you had any. Frederick Stewart was convicted of arson and aggravated arson. The state, however, failed to prove him guilty beyond a reasonable doubt of either of these offenses. Arson occurs when by fire or explosion a person knowingly damages the property of another without the person's consent. Is there any dispute that arson occurred in this case? To the building at 5305. There's only one arson. The other charge is aggravated arson. There's one arson and one aggravated arson. Is there any dispute that arson occurred in this case? There was no arson because there was no proof that the property belonged to of another. And so the state failed to prove that element of the offense. Is there any dispute that he burned down? He did not challenge the fire at the first building. But the state failed to prove that somebody other than the offender had an interest in the property, which is an element of the offense, an essential element of the offense. Case 5 even supports a broad reading of another element. The state only needs to prove the mere existence of persons other than the offender, not their specific identities, whose interests the defendant could not defeat or impair. Does this have to be, though, Mr. Jones? It does not have to be Mr. Jones. What about the squatters, then? The squatters do not have an interest in the property beyond. What is the legal definition of a squatter? I do not know the legal definition of a squatter. Actually, a squatter is someone who, by just sort of moving in, it's not about legal title or ownership, but a squatter takes interest by moving in. And not only that. If you look at our, you know, the law dictionary, that's what it is. I was just wondering if you were limiting it to Mr. Jones, but you're interpreting it broadly like they say. As the case of squatters, you know, we might agree don't own things. But don't the cases say that you really don't have to have an owner? You don't have to have the specific owner. You could have a tenant. So why isn't a squatter in there with that whole universe? Well, the state didn't prove that there were squatters. Wasn't there testimony? The fire marshal testified that there was evidence of squatters and that there were a couple of lighters, and that was all that was testified about. Wasn't there testimony that the building was vacant? The building was vacant, yes. It wasn't, like, resided in by a full-time tenant. There was nobody living in the building. All right. So with that vacant whatever, and then the testimony that Mr. Jones died eight months before, and he was, like, 90 years old, but he had lived at that address, and then you've got the squatter evidence. Does that show that anyone had more of an interest than Frederick Stewart? Was there any testimony at all that we could ever say showed that Frederick Stewart had an interest? No. My point only being that there's no evidence that anybody else had more of an interest. Well, it's not about more. It's not about whether somebody had more. Well, an interest that he had no right to. It's just that even if Stewart had an interest, he can't defeat that interest of anybody else by burning his own building. Correct. So there has to be evidence that there was somebody with a greater interest or an interest that he could not defeat. Any. An interest that he could not defeat. Right. Okay. The death certificate of Willie Jones does not do this. The death certificate shows that he died on September 22, 2006, and the fire occurred June 8, 2007, almost a year later. The death certificate shows only that that was the address provided on the date of his death. It doesn't show that he owned the building. So the state's argument that the state somehow now has this interest in the property is invalid because there's no evidence that he was the owner. There isn't even evidence that he was a tenant. He could have simply been staying there with a friend who actually owned the building. Do you think he made a tenant, though? No, I'm not suggesting any of the reasons that he might have been there. The death certificate shows, doesn't give, It shows that a 90-year-old man who died eight months before the fire was living in that building. All right. And given his death, he certainly had vacated it and certainly can't claim any interest from where he is at the time of the fire. Correct. That's your position, right? Correct. And the state simply argues either his estate or some unclaimed person that, you know, appears out of nowhere, has this interest. But that is no more an interest, shows no more of an interest than anyone, than Frederick Stewart, than anyone. There's no evidence that anyone had any interest in this property, that Frederick Stewart could not defeat or impair. Is taking an inference from that evidence improper as well? Can you draw an inference? You cannot draw an inference from the death certificate, no. Why not? Why can't you draw an inference that this is the guy that lived there? He was 90 years old. His address was at this building. I mean, the fact that a 90-year-old person was living in this house was at least clear eight months before the fire. Correct. There was testimony that the building was vacant. There was testimony that actually squatters were in there. There was testimony that there was some evidence of, you know, inhabiting it by lighters and things strewn about. So how do you not reasonably infer, or can't you at least reasonably infer, from all that testimony that there was an interest in this building? No. All right. Well, I'm just saying, you don't even tell us. Do you have a case that says that? There are no cases. And I would live to say that another element should be interpreted that way. I understand that there is no case that says that. But what I'd be looking for is a case that attempts to draw the boundaries of a reasonable inference from proven facts. And I can understand your position because I think your position is that there was probably easy evidence to obtain. There was easy evidence to obtain that they could have presented, and a death certificate is probably the least persuasive sort of evidence to prove an interest, not even by him because he's dead, but by an inference that it was his estate. The death certificate proves not dead. In a building with squatters living in it, is that called, would that ever be considered arson? Or would that be, would it be your position that if you go to the back of a porch instead of building on fire where squatters live, that you are not guilty of arson? What if you saw those squatters in there? Is that your position? Would you say that we can't have arson when you have squatters? Let me just rephrase that, take the privilege of presiding judge. Judge, can you commit, can you be charged with aggravated arson without committing arson? I mean, you have squatters in there. Knowledge that they're there. Knowledge that persons are present in the, yes. So the squatters being present is sufficient to establish the interest. For an aggravated arson, you would still have to prove that that building was of another. I mean, the element, that doesn't take away the element that. And under Illinois law, you're saying that squatters isn't sufficient. I honestly have to tell you that I do not know, but I do not believe that squatters is sufficient. Moreover, the state didn't prove that there were squatters. Well, there was testimony. When testimony is unobjective for whatever it's worth, there's an Illinois Supreme Court case that says, you know, that that's, that goes in for what it's worth. But I think you have a point here that maybe you haven't emphasized, and that is that, you know, the charging instrument says that Willie Jones owned it, didn't it? The charging instrument did say that Willie Jones was there. Or that he had an interest. It didn't say he was the owner. It said that. It said that he would be of another that the state was proceeding in. Okay. And can he have an interest just by virtue of having lived there at the time of his death? Can you establish that he had an interest at the time of the fire by simply proving that he lived there at the time of his death? No. That was eight months before the building was, we don't know what his interest was at the time of his death. So you cannot, there's no argument. But it doesn't have to be an owner. It doesn't have to be an owner. It doesn't have to be a tenant. But he has to be alive. If someone's living there, is that enough? Yes.  So if the fire had occurred eight months before, the day after he died would it be enough? Correct. If his death certificate was the date of the fire, it would be a different argument. And all the state had to do, I mean, it was simple. The recorder of deeds, the assessor's office. Well, they did that and then there was an objection. No, there was an objection to the death certificate, which should have been a red flag to the state. No, there was an objection to the testimony of the police officer who said he learned the owner from going to the recorder's office. Correct. There was an objection. And that was the state. And that goes to the other argument that the death certificate. And to the extent that he testified that he learned that information, there had to be documents available at the recorder of deeds that could have been obtained and presented at the time of the fire. The defense objected to the introduction of the death certificate as irrelevant, which it was because it didn't, as I'm arguing, it didn't show that Willie Jones had any interest in the property. And this also could have raised a red flag to the state. Well, let's go get something else, something a little bit better to show this up another. What's our standard of review regarding the jury verdict here? Because apparently the jury, knowing full well what the elements of the offense were, found that the elements had been met. Well, as I argued in the relevancy portion of the death certificate, that death certificate was prejudicial because it had the effect of, by the very introduction of it and presentation of it to the jury, it led them to believe maybe something more than it actually said. Here we have a death certificate with this man's address on it. He's the owner. It was prejudicial. What was the argument during the closing argument? During the closing argument? In regard to? In regard to the element of interest of another. I believe that defense counsel argued that the death certificate didn't prove that. No, I'm talking about the state. What did the state tell the jury? That the death certificate showed that it was Willie Jones' property. And it did not. The state also failed to prove that Patrick Stewart knowingly set fire to 5354 South Princeton, the second building with which he was charged with aggravated arson. A person acts with knowledge when they're consciously aware that such a result is practically certain to be caused by his conduct. 5354 South Princeton. When you say certain, what degree of probability are you? Practically certain is? Eighty percent? Pretty certain. Ninety? I mean, isn't it more probable than not? It's more probable than not. It's 51 percent. Or 50 plus. It's over 50 percent. It's practically certain. It's fairly up there, I think. Practically certain suggests that it's a lot more than 500. And the question is, is it just really a preponderance? Is it more likely than not? Does a person bear the burden when it's more likely than not that fire will spread, even across an alley and across vacant lots to another building, and he bears that risk, given the wind conditions and given everything that existed at the time that he set the fire? Practically certain is more than more likely. It is practically. It is. But these two buildings were separated by three companies. And practically certain comes from where? From the definition of knowledge in the statute. Was there testimony regarding how a fire spreads? How a fire spreads, no. Was there testimony that because of the wind that night that this fire was certainly likely to spread? There was no testimony that it was certainly likely to spread. Was there testimony that the embers were blowing directly in the direction? No. Are you sure of that? That the record doesn't show that one of the officers saw the embers moving in the direction of the other building? I don't recall that testimony, no. All right. And what do you say to the case that talk about sort of a similar factual scenario where an individual who sets fire to one building and then it spreads rapidly to another, that they're reasonably certain to know that when you burn one building, there's a great likelihood you're going to burn others when there's a wind? Well, however, these two buildings were separated by 300 feet, vacant lots and lots containing buildings. You don't think that's an indicator more likely that the fire is going to spread because it doesn't have to burn those other buildings in the process? It's not as easy as just spread to another building. It's spread to this building where he knows or has reason to know that people are present. It's not just any building down the street, any building across the alley. It's this specific building that he's charged specifically with knowing contains people. And so it's not as easy. That's the state's argument that it's reasonably certain that this fire is going to spread to another building. That's not what he was charged with. He was charged with being reasonably certain that this fire would spread to this particular building that he knew had people in it, and the state did not prove that. There's too much distance. There are too many things in the way. What's in the way? There was testimony there's nothing in the way. If you look at the map, there are all these buildings down Shields, and there's another building on Princeton before you get to this building. What side of the street are you? This is where the fire began. Right. And it ends up on the other side of the street where there's no buildings in its way to obstruct the path of that fire. There's a building right here. And houses right here. So your argument is that there were other places that were more likely to have gone than this place, and therefore they can't establish balance? I'm saying that it's not practically certain that the fire is going to go from here to this specific building that he knew that people were present in. The way you understand the state's position is that they can only charge arson where the fire actually spreads to. They can't charge arson to buildings that are close to proximity where no fire has spread to. But it's aggravated arson. I mean, there's a reason it's aggravated arson. They need to prove that he knew that these people were going to be there and that he knew that the fire would spread there. They have to prove the knowledge. And what you're saying is that there's really no scenario where, let's say, just the building next door burned, that most people would presume that nobody lives anywhere and really buildings aren't inhabited, right? So that, you know, you really don't have knowledge that you're going to burn a building with anybody in it because there's no reason to figure that people live in houses. You don't think the jury could infer that there was knowledge about the other building? No, and the state presented evidence that he had knowledge that people lived in that building. Because there were people who testified that they lived there. But you're saying that juries can't infer that people live in buildings. Maybe not where evidence is presented that the neighborhood is filled with vacant and abandoned buildings. But this wasn't the testimony, was it? That this neighborhood is filled with houses with vacant and abandoned buildings, yes. And that no one lives in this neighborhood. Not no one, but that it has. And does that mean that there aren't any buildings that have people inhabiting them? It doesn't mean that. Okay. But it means that that's one of the elements. There are inferences that can be drawn. You're saying this building was just too far away for him to know that anybody might be there. For it to be practically certain. I mean, that knowing, it's a high standard. It's not reckless, which leads me to my next point, is that the judge, at the very least, erred in refusing to instruct the jury on the lesser-included offense of criminal damage to property. There was certainly evidence that the jury could have found that Stuart was reckless in setting the fire on the back of the porch, that the fire would spread to another building. Without the intent to actually burn a building, I can understand that argument. But once you have intent to burn a building, it seems to me that that intention cannot be reduced just because it happens to reach a building elsewhere. I mean, the defendant clearly had a specific intent to burn a building. And he can't all of a sudden have, the law is not going to impute to him a lesser degree of culpability just because it reaches a building unintended by him. There is that transference of intent. Well, the state's argument about transfer intent does not apply in this case. First of all, he wasn't charged under a theory of transferred intent. The state didn't proceed under a theory of transferred intent. Do they need to? The jury wasn't instructed about transferred intent. This is the first time they're making this argument. Sounds like argument to me. What about your argument that it wasn't practically certain when the fire marshal said that given the wind conditions on the night of the fire, it was absolutely, I'm quoting him now, a possibility that the initial fire would spread to the secondary structure. That's what he said. Absolutely a possibility that it would spread to another structure. It's not practically certain that it would spread to this building. Well, you're saying that. You're saying that. You didn't cite a case. Here's an expert that says absolutely a possibility that fire would spread to the secondary structure. What you've done is said this doesn't mean that because I say so, but what about a case? There are very few arson and aggravated arson cases in the state of Illinois. We can look at the state's cases that they cited outside of the state of Illinois, one published, one not, but those don't prove, I mean, they're very difficult to compare. What do those cases say? Well, one is from a state that has an intentional element to. A little bit higher standard than knowing. Correct, but they also talk about a pertinence, that the buildings basically have to be directly next to each other, almost conjoined. That's the case law that that case relied on. The other case has a lower standard, and the case didn't talk really about where the buildings were in location to one another. So they're not helpful. Did you argue that the aggravated arson fails if the arson fails? I did not argue that. To go back to the transferred intent doctrine that you brought up, it also does not apply because the intent for the aggravated arson and the arson are not the same. Aggravated arson has a more specific knowledge. I didn't bring it up for that point. I brought it up for the point that if it's an intentional act by the defendant that started the entire confrontation, I can't understand how you can argue that as to other buildings, that intent has somehow been reduced and doesn't logically make sense to me. Either that intent was intentional or it wasn't. Well, I think your argument is that substantial probability has to be an awareness that the arsonist has. The fact that an experienced firefighter like the battalion chief would be aware of that doesn't necessarily mean that a non-fireman, you, me, would be, as the statute says, substantially probable that my behavior is going to set a fire on the building across the street or across the alley and down the way. And maybe that's part of your point. But I guess it's for the jury to decide. Well, but had the expert been asked that question directly, had the fire marshal been asked that question directly as an expert, given your level of understanding of how fires work or to a reasonable degree of fire marshal certainty, I guess, is there a substantial probability that the fire would have spread from this building to another building down the line and missing those that were much closer? And he wasn't asked that question. No. No, but he did say it was absolutely a possibility that this fire would spread to that particular structure. He said that. But he didn't ask the question whether a layman would come to the same conclusion as he did. No, because he's the expert. This is what he said his expert opinion was. And the standard for knowing is conscious. The jury would have to at least get this from him because that's why he was called. And it's a conscious awareness on the part of the defendant as to the practical certainty that the fire would spread to that location. I mean, that's really where we're having a difficulty. It's just there's a point regarding the substantial probability that fire would spread to other buildings, missing closer buildings, and working that through the knowledge requirement of the defendant, which you're suggesting that knowledge has to actually have been established that the defendant knew that the fire would spread in the way it did. Correct. Which is why that there's an issue about it. The judge should have instructed the jury on the lesser included offense of criminal damage to property, and the jury could have decided whether this was a reckless act or a knowing act or neither. So would it have been a reckless, would it have been a criminal damage lesser included offense to both? They asked for it to both. I argued it solely as to the aggravated arson. Okay. All right. You can have a couple minutes to respond. Thank you. May it please the Court. I'm Assistant State's Attorney Emma Nowacki on behalf of the people of the State of Illinois. There is no question here that defendants started a fire at the property on Shields. Now, to address the knowledge element briefly, what we have here is evidence that this property was vacant. Clearly, defendant didn't live there. Clearly, he didn't own it. He shows up in latex gloves and a gas can. When you say clearly, clearly, the evidence is? A rational try of fact could clearly find the defendant showing up at this house, running from the police, discarding his gas can and shirt. Well, that's all suggesting that he didn't want to get caught. There are people who burn down their own buildings. True. But it's also an evidence. But they can't burn down their own buildings, can they? Not under the arson charge. Well, they can burn it down. They just can't be charged with arson. But we also know that if they have an interest with somebody else, they cannot burn their building. But if they're the only person. Even if they have an interest and someone else has an interest, they cannot burn that building. If they have an interest greater than that other person. I don't know where any of you are getting this greater language from. All the people have to prove that someone other than the defendant has an interest. And how did the death certificate prove that? The death certificate was relevant in showing the defendant did not live there previously. What if that death certificate had been five years earlier? Ten years earlier. Would it still have been admissible as probative of something? It certainly would have been less probative. Would you want to be the state's attorney arguing it's probative to a trial judge when you were trying to admit it if it were ten years old? If the building had been vacant for five years and there had been squatters, then yes. But what we have here is that it was not five years earlier. It was months earlier. And he had not lived there, obviously, anymore. But other people had. Do you have to establish that it was Mr. Jones, I believe? Do you have to establish that he was the owner? Or what is it that you have to show? We have to show that somebody other than defendant has an interest in the property which defendant cannot. At the time of the fire. Yes, which defendant cannot. And don't you at that point, in order to show Mr. Jones had any interest given his demise,  Because once he dies, unless he's the owner, I don't understand how he can have any interest in the building once he dies. If he wasn't the owner, then certainly he wouldn't have an interest in the property. So you have to establish the ownership. How did you establish ownership? No, the Illinois law is clear. You don't have to establish ownership. You just have to establish that somebody has an interest in the property. Other than the person who? Other than the defendant. And you use this as the inference you were asking the court to initially rule on before they admitted the evidence of the death of Mr. Jones. You had to argue that it would be reasonably to infer from the death of Mr. Jones eight months before, that somebody other than the arsonist now charged with this crime had an interest in the property on the night that the fire took place. And as the trial judge, I probably would have said to you, how do I make that inference just on what you just told me? The inference cannot be made only with the death certificate. But it's also relevant that this building was vacant and that there were squatters there. Okay. So what does that tell the jury? That the 90-year-old man died probably without anything, and he was 90 and he was still living in a building, and then eight months later it was vacant. Right. But what else? And then there were squatters living there and there's some lighters or something. What is that? What's the inference we get? What is that? The inference we get is that defendant had zero interest in the property. And so, therefore, someone other than defendant had an interest. And there was no testimony that established that he ever lived there? Nothing. Was there any testimony about where he did live? There was a little. Not testimony exactly where he lived. There's testimony that Gregory Sloan knew where he lived. Kids went by his house to get candy. There was testimony in that regard? Yes, there was. Could you point that out here? I did not point that out in my brief. But it's in the record. It is in the record. So he lived somewhere else? According to Gregory Sloan, he lived somewhere else. Well, that was testified to, though. Yes. There was testimony that he lived somewhere else in the neighborhood. Right. That's a start. That's a big start. Yes. But you didn't put that in your brief. But it is in the record? It is. All right. What about this? Does your aggravated arson fail if the arson fails because you didn't establish that someone other than the defendant had an interest? Absolutely not, because defendant's act of starting a fire in one place resulted in a knowing act of starting a fire in the second house. And when you use knowing in that sense, that's a legal knowing, right? Right. I mean, that's what we impose on individuals who start fires. We're going to say you knowingly started this other fire that spread for that reason. But is it the same sort of knowing, substantial knowledge that it was going to spread to that particular place? Defendant's mental state to the second house can be reached in two different ways. One is because the evidence shows that he was consciously aware what he was doing was starting a fire that was practically certain to spread. He was no amateur. He showed up with his latex gloves, his gas can. He ran from the house. He threw his shirt that smelled of gasoline. And he didn't start a small fire here. This was a huge fire with gasoline. Embers were seen flying across the alley to the second house. There were embers that were observed flying across towards the building that actually did? Yes. I believe it was Officer Brian testified that he witnessed embers flying across the alley to the second property and that house caught on fire. We also have defendant's mental state to the doctrine of transfer intent, which says one who does an unlawful act is liable for the natural and probable consequences of that act. Here, defendant did an unlawful act. He knowingly started the first property on fire. And it was absolutely natural and probable that that fire would spread. Fires by nature spread. So even if you don't establish who the owner is of the first building, you believe that your aggravated arson doesn't fall or fail? No. Because there was a defendant who had no interest in the second building. Gregory Sloan clearly had an interest in the second building. Going on to address the issue of lesser included, defendant's act of initially purposefully starting that fire on shields cannot also be said to be reckless. It was an intentional act. The case of Phillips is very instructive on this case. In that case, the defendant started fire to a garbage can. And the court said that that intentional act of starting fire to the garbage can, even though in his confession he said he didn't intend for the fire to travel to the house, that could not be recklessness. Because it was an intentional criminal act in the first place. It could not transfer over to a substantial unjustifiable risk or harm to the second house. For these reasons and those stated in our brief, we respectfully ask this court to defer our defense. Before you depart, let me go back to knowing, to the aggravated arson one. So your position is that he really didn't have to prove any direct evidence that he had knowledge that it was going to spread to the particular home where it did spread. But that the law allows the jury to find knowledge based on the common understanding that fires will spread. And if they do spread, the risk falls on the defendant. Or do you have direct evidence? Can you point to evidence in the record that says the defendant knew it was going to spread to this particular building? We have circumstantial evidence. And circumstantial evidence can... Right. There's no question. What circumstantial evidence do you have? There's no... I'm sorry. Is your question what circumstantial evidence do we have? We have... That it was going to spread to this particular building. Well, we have direct testimony, first of all, from Fire Marshal Rivera, who testified it was practically certain, or not practically certain, I apologize, it was absolutely possible that fire would spread. And it's common knowledge. Fires spread, they're erratic. I think anyone knows this, especially the defendant who shows up with his latex gloves and gas can spreading gas all over the second floor. He knew precisely what he was doing. So how do we get to this particular building from that testimony by the Fire Marshal? I don't think you have to get to a particular building. You just have to show it's practically certain it's going to spread to a residential building. Well, that's what the Phillips case was all about, wasn't it? I'm sorry, which case? Phillips. If you start a fire in a garbage can, you know that this is going to spread. Wasn't that what the case was about, or part of it? That case is about the less knowing versus reckless. Right. So that's not quite on point. And also, just to touch briefly on what... Well, let me ask you this. Are you, in fact, at least implicitly conceding that when the charge is based on a spreading of the fire, the evidence regarding knowledge may not be quite as substantial as you would need for the evidence as to the or that he met the criminal conduct requirement of knowledge? You know, this is not like a civil foreseeability case. This is not Paul's graph. No, but if you look at how the Ohio court looked at it, that's how the Ohio court looked at it. This is basically, under our statute, because it's criminal responsibility, that's why they use the language practically certain. Yes. Because it's a crime. Yes. This is not negligence in the air. Paul's graph again. This is intent to commit a crime. And I believe that the circumstantial evidence and the direct evidence from fire marshal Vera shows that it's practically certain that fire would spread. Now, we don't have this situation where the fire in the second building spread to yet a third, to a fourth, to a fifth, and created a complete conflagration. But I would assume that your statement would be the same. Once it ignited the second building, anything else beyond that would also be included. Yes. So if there was somebody in the building another block down the way, it was killed because of the fire being spread. You'd have an aggravated arson there, too. Certainly. And I don't think this court can forget that the doctrine of transfer of intent can also apply to this situation. And that is a sort of situation where we look at natural and probable consequences. We don't need to show a practical certainty. Do you recall that Mr. Sloan did testify that an older man lived in 5405 South Shields? Yes. So assuming that he used to live. Did he give a time frame? He used to live. And he said no one lived in the building at the time of the fire. And used to could have met a year and a half prior, three years, five years? Probably Willie Jones is who it was. Probably? Yes. All right. Thank you very much. Thank you. Just a few quick points. The state's attorney just said that if Willie Jones wasn't the owner at the time of his death, he didn't have an interest in the property. Willie Jones is charged in the indictment. If Willie Jones wasn't the owner, he didn't have an interest in the property. The state did not prove Willie Jones was the owner of the property at any time. So could they have said property of another without naming someone and still satisfy? They don't have to show the specific people. Yes. In the indictment. But in the indictment and in the jury instructions, they were charged with Willie Jones. That's your point. But once they mentioned Willie, they've got to prove it. But I don't argue that in your brief. I argue that they didn't prove that Willie Jones had any interest in it. You said that they only have to show someone other than. Now we're going back to they have to show it was Willie Jones. But didn't Mr. the gentleman Sloan, Mr. Sloan, didn't he testify that an older man used to live in the building? He testified that an older man used to live there, but it had been vacant. What about the testimony that we just heard about? According to my notes, Gregory Sloan testified that he had seen the defendant a couple of times in the neighborhood. Not that he knew that the defendant didn't live there, only that he had seen the defendant a couple of times in the neighborhood. And that was to show that he knew that Stuart knew that people lived in the building on Princeton. Secondly, transferred intent does not apply in this case. The knowledge requirements are different. The knowledge for arson is only knowledge as to setting the place on fire. The knowledge as for aggravated arson includes the knowledge that somebody lives in the house. It's a greater standard. It's a greater knowledge. Moreover, if you have... That's regarding the particular offenses. Correct. Their argument is that whenever fire spreads, transferred intent always has to apply... If that were the case... Out of practicality. If that were the case, consider a scenario where you set fire to one building. An ember flies six miles, 100 miles to Canada. It's a miracle, but it flies to a hospital that always contains people. He's guilty of aggravated arson. If they can prove it, I think if they had an expert witness come in and say that this is a very likely outcome, maybe so, and let the jury decide. I highly doubt that that was the legislature's intent in writing the aggravated arson statute. Okay. Would it be kind of common knowledge, though, that fire spreads? There is common knowledge that fire spreads. There's also criminal damage to property, which specifically goes to a reckless intent in terms of fire spreading. And just one final point on Phillips is not applicable in this case. In Phillips, the defendant set fire to a garbage can three feet away from the building. This was not 300 feet with things in between. Moreover, there was evidence in Phillips that the defendant actually ignited the house on fire, that he put lighter fluid on the actual house. So Phillips is not applicable in this case. All right. Thank you very much. This case will be taken under advisement.